565 A.2d 1153

**SHOVEL TRANSFER AND STORAGE, INC., Appellee,**

v.

**Hubert SIMPSON, Comptroller, Pennsylvania Liquor Control Board and Michael Hershock, Secretary of Office of Budget and Administration, Appellants,**

**and**

**the Pennsylvania Liquor Control Board, Intervenor.**

Supreme Court of Pennsylvania.

Argued March 7, 1989.

Decided Nov. 6, 1989.

236

Andrew H. Cline, Harrisburg, Timothy D. Searchinger, Deputy General Counsel, Office of General Counsel, Philadelphia, for appellants.

William G. Merchant, Monroeville, for Shovel Transfer and Storage, Inc.

Kenneth B. Skelly, Pennsylvania Liquor Control Bd., Harrisburg, Eileen S. Mounus, for Pennsylvania Liquor Control Bd., intervenor.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.*

■ This case comes to us on appeal from an order of the Commonwealth Court overruling the preliminary jurisdictional objections of appellants Simpson and Hershock to a petition for review by Shovel Transfer and Storage, Inc. ("Shovel"), seeking declaratory and injunctive relief. ·The dispute between the parties arose from the following factual situation. The issue presented is whether the Board of Claims ("Board") has jurisdiction to determine whether a contract has been "entered into" for the purpose of invoking its jurisdiction.[1] For the following reasons we find that the Board is empowered to make such a determination.

Early in 1986, Shovel learned that the Pennsylvania Liquor Control Board ("PLCB") was looking for a new warehousing facility for its Pittsburgh distribution area. Shovel inquired whether the PLCB would be interested in utilizing a Pittsburgh facility that Shovel had recently acquired. Upon inspection of the facility, the PLCB determined that it would be suitable and instructed Shovel to contact the PLCB's Logistics Bureau to discuss contract formation. The PLCB's Executive Director then recommended transfer of the existing warehouse to Shovel's facility, and the Board voted to adopt this recommendation and relocate. The PLCB's Contract Administrator furnished Shovel with a fully negotiated contract, which contained blanks for the signatures of Shovel's President, the PLCB Chairman, PLCB Chief Counsel, the PLCB Comptroller, the State Secretary for Budget and Administration, and a representative of the Attorney General's office.

The contract was subsequently signed by all of the necessary signators except the Comptroller and the Budget Secretary, who refused to affix their signatures because the

---

* This case was reassigned to this writer.

1. The enabling statute, 72 Pa.S. § 4651–1, provides that the duty of the Board of Claims "shall be to arbitrate claims against the Commonwealth arising from contracts *entered into* by the Commonwealth...." (Emphasis added.)

contract was not the product of the normal bidding process. PLCB then invited proposals from five companies, including Shovel, but contracted with another distributor at a price lower than Shovel's. Shovel brought the instant action before the Commonwealth court to compel the comptroller and Budget Secretary to sign the contract, or, alternatively, to have the contract declared valid without their signatures.[2] Shovel's position is based on its contention that a valid contract had been fully executed, save for appellants' signatures. The Commonwealth Court overruled the appellants' objections and found that it had jurisdiction over this inquiry. For the reasons that follow, we disagree and reverse the order of the Commonwealth Court, and direct the parties to proceed before the Board of Claims.

Shovel instituted its action in the lower court by filing a petition for review in the nature of mandamus, seeking a declaratory judgment and injunctive relief. The Commonwealth Court characterized this action as an attempt by Shovel to discern whether appellants were proper signatories to the contract and, if so, to compel them to sign it. Therefore, the Commonwealth Court determined that the action was not a contract claim, and that the jurisdiction of the Board of Claims had not been invoked.

This position is inherently inconsistent. No logical reason exists for separating the signatures from the contract, because the absence of the signatures would be immaterial if the underlying contract is invalid. The signatures have no intrinsic significance; their sole value must be determined by their effect on the contract.

The Commonwealth Court accepted Shovel's theory of the case as statutory rather than contractual. Shovel argued that the contract had been accepted by the PLCB

---

2. The PLCB requested and was granted relief to intervene as a "nominal respondent" in the initial action. PLCB contended that it was merely a stakeholder in the proceedings but was nevertheless an indispensable party. *Shovel Transfer and Storage, Inc. v. Simpson,* 112 Pa.Commw. 129, 535 A.2d 251 (1987). PLCB has filed with this Court a brief in support of the appellants' arguments related to PLCB's status as an independent agency.

and that the action was brought to enforce appellants' statutory duty to approve it.[3] Assuming *arguendo* that such a duty exists, Shovel cannot use it as a basis for characterizing this claim as statutory. The rights Shovel asserts derive only from the underlying contract. Consequently, Shovel's true objective is to establish the enforceability of that contract, which is clearly a contract claim. The Board of Claims is a body created by statute for the arbitration of contractual and certain other claims lodged against the Commonwealth. Act of 1937, *as amended* October 5, 1978, P.L. 1104, No. 260 § 2, 72 Pa.S. § 4651–1. Although the Commonwealth traditionally had sovereign immunity from suit, the establishment of the Board of Claims waived that immunity by providing a tribunal whose specific duty was to entertain contract actions against the Commonwealth.[4] The statute gives the Board of Claims "exclusive jurisdiction to hear and determine claims against the Commonwealth arising from contracts hereafter *entered into* with the Commonwealth, where the amount in controversy amounts to $300.00 or more." 72 Pa.S. § 4651–4 (emphasis added). A "claim ... arising from a contract" is often a dispute over the existence of the alleged contract as well as the liability flowing from it. In order for the Board of Claims to accept jurisdiction over a particular cause of action, it necessarily must determine as a factual predicate whether there is a valid contract in exist-

3. In this regard, Shovel asserts that the PLCB is an independent agency which operates autonomously and outside the policy supervision and control of the governor, 47 Pa.S. § 2–201 *et seq.* Shovel argues, therefore, that the Act forecloses the Budget Secretary's authority to interfere with the actions of the Board. Shovel further maintains that the Board's Comptroller is given authority only to approve funds appropriated to the Board, 72 Pa.S. § 1501. Thus Shovel contends that because approval of the instant contract is beyond the scope of the Comptroller's authority, formation of the contract does not depend upon the approval of the Comptroller.

4. 1 Pa.C.S. § 2310 (1978) provides that the Commonwealth shall enjoy sovereign and official immunity unless otherwise specifically authorized by statute. The only statute specifically authorizing an action for breach of contract claims is the Act of 1937, *as amended,* Oct. 5, 1978, 72 Pa.S. § 4651–1, creating the Board of Claims and setting forth its limited jurisdiction. *Ezy Parks v. Larson,* 499 Pa. 615, 627 n. 9, 454 A.2d 928, 934 n. 9 (1982).

ence. Like any other tribunal,[5] the Board of Claims has the implicit right to decide every question which occurs in a cause of action over which it has jurisdiction. *Thompson v. Fitzgerald,* 329 Pa. 497, 198 A. 58 (1938), *aff'd. sub nom. Princess Lida of Thurn and Taxis v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939).

We have construed the language of the enabling statute to mean that the Board of Claims is empowered to entertain *all contractual claims* against the Commonwealth irrespective of the type of relief sought or the fact that the Board of Claims may not have the power to grant the relief requested. *XPress Truck Lines, Inc. v. Pennsylvania Liquor Control Board,* 503 Pa. 399, 407–08, 469 A.2d 1000, 1004 (1983) (monetary damages or specific performance sought); *Ezy Parks v. Larson,* 499 Pa. 615, 626–28, 454 A.2d 928, 934–35 (1982) (specific performance sought); *Emergency Medical Services Council, Inc. v. Department of Health,* 499 Pa. 1, 6–8, 451 A.2d 206, 208–09 (1982) (specific performance sought). However, in *XPress, supra,* we declined to address the question of whether jurisdiction of the Board of Claims encompasses the ability to determine whether a contract had been "entered into." We now direct our attention to precisely that question, and we hold that the Board of Claims has jurisdiction to determine whether a contract has been "entered into" for purposes of the Act.

Our finding that jurisdiction of this matter lies with the Board of Claims is supported by the fact that otherwise there would be no forum available to establish the fact of a valid contract against the Commonwealth. Since at common law sovereign immunity barred a claimant from asserting a claim against the Commonwealth based upon contract, 1 Pa. C.S. § 2310, no other forum would be available to test the validity of an alleged contract if it did not fit within the exception of the statute provided to exempt the immunity. Thus, any time the Commonwealth challenged the existence

---

5. Unlike other independent agencies, the Board of Claims is viewed as a judicial tribunal. *Foley Brothers v. Commonwealth of Pennsylvania,* 400 Pa. 584, 163 A.2d 80 (1960).

of the underlying contract, the claimant would have no forum to establish its legitimacy. The statute creating the Board of Claims would thus be construed as allowing a claimant to sue only if the Commonwealth concedes the existence of a valid contract in the first instance. We find no basis for such a limited construction. In defending the Commonwealth Court's jurisdiction over this matter, however, Shovel maintains that its action does not arise from a contract. Rather, Shovel contends that it seeks to force the appellants to comply with their statutory duty to either sign the contracts or permit the PLCB to adopt the contracts without their signatures. If Shovel is correct in characterizing its claim as statutory, there would be no question that jurisdiction of the matter lies with the Commonwealth Court. *See e.g., Delaware County v. Commonwealth, Department of Public Welfare,* 34 Pa.Commw. 165, 383 A.2d 240 (1978). However, if the source of the right asserted by Shovel is contractual rather than statutory, the cause of action sounds in contract, and the proper forum is the Board of Claims.

The mere fact that the validity of a contract may turn upon issues of statutory duty does not create a statutory right of action. Rather, the focus is upon the origin of the rights claimed. In the instant matter, Shovel's objective is to establish the contractual relationship. Shovel's right to pursue this objective derives necessarily from the rights and obligations created by the contract, not by the alleged violation of a statute by the PLCB or the appellants. Shovel's action thus assumes the nature of a breach of contract action in which a traditional remedy for the breach, namely specific performance, is sought. The proper forum for this type of action, therefore, is the Board of Claims. As we stated in *XPress, supra,* upon similar facts:

> [Appellee] argues since no contract was fully executed by all the appropriate and designated officials, no binding contract exists.... The Commonwealth simply argues that the contract with XPress was not binding because it was never signed by the Comptroller or the Board's

Executive Director. We need not reach these arguments on the merits because they are properly within the exclusive jurisdiction of the Board of Claims. (citation omitted) *XPress Truck Line, supra,* 503 Pa. at 409, 469 A.2d at 1005.

Certainly the Board of Claims possesses the expertise to handle such inquiries.[6] In its normal duties the Board resolves the myriad legal questions which arise regarding issues of the proper interpretation of contractual language. The decision whether to award monetary or equitable relief, for example, necessarily involves an evaluation of whether the party claiming injury has made the requisite showing for either remedy. The Board is thus competent to evaluate the legal issues attendant to a determination of whether a contract has been "entered into" for purposes of determining its jurisdiction. In either circumstance, cases can be appealed to Commonwealth Court for review and correction of any legal errors alleged by the parties. *See e.g. Commonwealth, State Highway and Bridge Authority v. E.J. Albrecht Co.* 59 Pa. Commw. 246, 430 A.2d 328 (1981).

This Court's decision in *Delaware River Port Authority v. Thornburgh,* 508 Pa. 11, 493 A.2d 1351 (1985), is helpful in defining our holding today. The obligation in that instance arose from the statute and not from the contract as was the case in the instant matter. Thus we found that the dispute was properly brought in the Commonwealth Court.

In *Delaware River Port Authority,* the underlying dispute was whether the Commonwealth was required to build a bridge that would span the Delaware River between the two states. The issue before the court was the appropriate forum for the initial airing of the dispute. The Commonwealth contended that if it had incurred any such obligation to construct such a structure it was by way of contract and that only damages would flow if it failed to perform. Proceeding from this premise the Commonwealth contended that jurisdiction for such a claim would be in the Court of

6. The Board of Claims comprises one lawyer, one civil engineer, and one layperson. 72 Pa.S. § 4651-1.

Claims and not before the Commonwealth Court. The Delaware River Port Authority relied upon a statutory obligation which it claimed existed. This Court agreed that in that instance a statutory violation issue had been raised and concluded that jurisdiction was properly in the Commonwealth Court. The factor that distinguishes *Delaware River Port Authority* from the case presently before this Court is that in this instance we are dealing with an agency of the Commonwealth, unlike *Delaware River Port Authority* in which the agency was not an agency of the Commonwealth.[7]

The Board of Claims, like any other tribunal, of necessity must determine its own jurisdiction. *Pennsylvania Railroad Co. v. Pennsylvania Public Utilities Commission*, 396 Pa. 34, 152 A.2d 422 (1959). No other tribunal can intervene to divest a court of its power to adjudicate a particular claim.[8] The forum's decision in this regard is a matter of the correct application of law, and as such it, too, will be reviewed on appeal. Had this case been brought initially before the Board, the Board itself had the power to dismiss the case for want of jurisdiction if it found that this case was not a contractual dispute. In the instant matter the Board had no opportunity to make such an inquiry.

7. It is important to note that the circumstances of *Delaware River Port Authority v. Thornburgh*, 508 Pa. 11, 493 A.2d 1351 (1985), arose from the Delaware River Port Authority Compact. The Compact was an agreement entered into by Pennsylvania and New Jersey to effectuate the development of the Delaware River and Port District. *Id.*, 508 Pa. at 15, n. 1, 493 A.2d at 1353, n. 1. When it was enacted by the General Assembly in 1931, its obligations were given the same effect as if they had been imposed and authorized by statute. *Id.*, 508 Pa. at 18, 493 A.2d at 1354. Damages were an inadequate remedy for a failure to fulfill those obligations because the economic development and revenues of two states were involved. *Id.* If Pennsylvania's obligations were not met, the entire state of New Jersey justifiably could lodge a legitimate complaint. Here, however, the contract binds only the agency and Shovel Transfer. The only party to complain about the Commonwealth's failure to comply with the instant contract is Shovel itself. No other party has any significant interest in Shovel's dealings with the Commonwealth. Thus the instant contract certainly does not rise to the level of statutory obligation reached in *Delaware River Port Authority, supra.*

8. *See* n. 4, *infra.*

For the foregoing reasons, the order of the Commonwealth Court is reversed and the case is remanded to the Board of Claims.

LARSEN, J., did not participate in the consideration or decision of this case.

FLAHERTY, J., files a dissenting opinion.

ZAPPALA, J., files a dissenting opinion.

ZAPPALA, Justice, dissenting.

I disagree with the majority's characterization of Appellee's objective as one to merely establish the enforceability of a contract between it and Appellant. For that reason, I would affirm the Commonwealth Court's opinion granting summary judgment in favor of Appellee Shovel and denying summary judgment to Appellants Simpson and Hershock.

In *Shovel Transfer and Storage, Inc. v. Simpson*, 112 Pa.Commw. 129, 535 A.2d 251 (1987), the Commonwealth Court was asked to determine, by way of preliminary objections, whether jurisdiction over this matter lay with the Commonwealth Court or with the Pennsylvania Board of Claims. It determined that the Commonwealth Court had jurisdiction, but instructed Appellants Simpson and Hershock to answer on the issue of whether or not their signatures were needed to establish a valid contract.

In a memorandum opinion filed June 10, 1988, the Commonwealth Court determined that the signatures were not necessary for the establishment of a valid contract, and granted summary judgment in favor of Appellee Shovel. Appeal was taken to this Court.

The majority states that "Commonwealth Court characterized this action as an attempt by Shovel to discern whether Appellants were proper signatories to the contract, and, if so, to compel them to sign it. Therefore, the Commonwealth Court determined that the action was not a contract claim, and that the jurisdiction of the Board of Claims had not been invoked." Majority Opinion at 3. The majority opines that the "true objective is to establish the

enforceability of that contract, which is clearly a contract claim."

I disagree with this statement. The issue of formation of a contract is not within the jurisdiction of the Board of Claims but rather, must be determined by the Commonwealth Court. The enabling statute, 72 Pa.S. § 4651-1, provides that the duty of the Board of Claims "shall be to be arbitrate claims against the Commonwealth arising from contracts entered into by the Commonwealth ..." The dispositive issue is whether the Board of Claims can *ever* determine its jurisdiction when a prerequisite of the jurisdiction of the Board of Claims is that a contract between the Commonwealth and another party be *entered into*. The plain language of the statutory authority indicates that if there is a question of whether a contract has been entered into, the Board of Claims has no jurisdiction.

Our opinion in *Keenheel v. Commonwealth of Pennsylvania, Pennsylvania Securities Commission*, 523 Pa. 223, 565 A.2d 1147, supports this interpretation. In that case, Appellant Keenheel was seeking to rescind a contract. In my concurrence, I noted that a claim of recission "does not seek to enforce a contract; it seeks a declaration that the contract is of no effect." *Id.*, 523 Pa. at p. 231, 565 A.2d at 1151, Zappala, J. concurring. I further reasoned that if the Commonwealth Court determined that recission was an inappropriate remedy, a claim within the jurisdiction of the Board, as to the enforceability of the contract, may exist.

For these reasons, I agree with the Commonwealth Court's determination that jurisdiction to determine whether or not a contract has been entered into lies with that court, and not with the Board of Claims. I would affirm the judgment of that Court, and its declaration that a valid contract existed, notwithstanding the absence of Appellants' signatures.

FLAHERTY, Justice, dissenting.

The fundamental law of this case is that the Commonwealth, like any party to a contract, absent a statutory

restriction, may condition the formation of its contracts in any legal manner it chooses. Here it chose to condition the formation of a contract on the approval of third parties. This is perfectly permissible, and, in the case of state agencies entering multi-million dollar contracts, obviously prudent and desireable.[1] *See* 1 Corbin, *Contracts*, § 61

[1] The background of this dispute is that Shovel has been involved in various contractual arrangements with PLCB for the warehousing and distribution of liquor in southwestern Pennsylvania for approximately thirty years. In 1985 Shovel was providing these services at a location outside of Pittsburgh, but Shovel located a warehouse suitable for PLCB use in Pittsburgh and notified the PLCB. When the PLCB indicated that it was interested in the Pittsburgh warehouse, Mr. Shovel and his wife entered into a sales agreement to purchase the facility. Thereafter, members of the PLCB visited the Pittsburgh facility, and subsequently the board approved the relocation of its southwest distribution center to the new Pittsburgh location.

On October 1, 1986 the PLCB sent a draft contract to Shovel. However, when the board's comptroller reviewed the contract, he raised questions about the propriety of awarding the contract without bids. The PLCB, nonetheless, sent the contract to Shovel for execution, indicating that he should return the contract for "Board and other agency approval's [sic]." The PLCB Chairman and Chief Counsel then executed the contract and then submitted the contract to the PLCB comptroller for his approval. The Comptroller returned the contract with a request for clarification, citing Management Directive 250.3 and Manual 215.1, Contracting for Services, which require justification of the award of a sole source contract. The PLCB responded that they anticipated a cost saving by moving to Pittsburgh.

When further correspondence failed to resolve the matter, the PLCB met with the Budget Office. As a result of these meetings, the Budget Secretary also determined that the PLCB had failed to justify the award of this sole source contract:

As I have indicated in our prior discussions, the LCB very easily could have, and most certainly should have, at least issued a Request for Proposals ("RFP") prior to negotiating a contract with Shovel.... Furthermore, the Board should certainly have provided written sole source justification and received approval from the Comptroller before awarding any contract to Shovel.

.  .  .  .  .

The failure of the Board to follow these accepted procedures, prior to negotiating and executing the contract with Shovel during the final months of 1986, is a practice which this Administration cannot condone. Accordingly, neither I nor the Comptroller are willing to sign this contract.

The contract which the Comptroller and Budget Secretary had refused to sign contained the following signature page:

Now, therefore, the parties intending to be legally bound hereby, have set forth their hands and seals this 10th day of November, 1986.

(1963). No statute prevents the PLCB from conditioning its contract upon the occurrence of the approvals that were involved in this case.

Once it is determined that the case sounds in contract and should have been filed before the Board of Claims, the outcome of the case is clear, as, in fact, was stated by Commonwealth Court:

> We are well satisfied that Shovel cannot prevail before the Board of Claims on a contract which purports on its face to require signatures which have not been affixed thereto.

*Shovel Transfer and Storage, Inc. v. Simpson,* 112 Pa. Cmwlth. 129, 133–34, 535 A.2d 251, 253 (1987). If Shovel cannot prevail before the Board of Claims, as it surely cannot, and as even Commonwealth Court acknowledges, I would decide the matter here as a matter of law and avoid the unnecessary exercise of remanding to the Board of Claims for the entry of an obvious determination.

| | |
|---|---|
| s/ DAVID W. PENNICK | s/ ROBERT P. SHOVEL |
| Chairman | President |
| Pennsylvania Liquor | Shovel Transfer and |
|     Control Board | Storage, Inc. |
| | |
| s/ KENNETH A. SKELLY | |
| Chief Counsel | Comptroller |
| Pennsylvania Liquor | Pennsylvania Liquor |
| Control Board | Control Board |
| Date: November 10, 1986 | Date: |
| | |
| Attorney General's Office | Secretary, Budget & |
| Date: | Administration, |
| | Commonwealth of |
| | Pennsylvania |
| | Date: |

Presumably because the Comptroller and the Budget Secretary refused to sign the contract with Shovel, the PLCB on December 2, 1987 voted unanimously to issue a request for proposals for a Pittsburgh distribution facility. Shovel was invited to participate, and the PLCB received proposals from five contractors. General Commodities Distributing Company (GENCO) submitted a proposal which was $3.5 million less than the original Shovel contract, and on April 13, 1988 PLCB and GENCO executed a contract which was approved by the Comptroller and the Budget Secretary.

It is a poor reflection on judicial efficiency when a disappointed state contractor is able to tie up two appellate courts and force an unnecessary remand by raising the red herring of statutory requirements which do not exist. We may not be able to prevent plaintiffs from distorting the nature of their claims, even outrageously, but we should not be hesitant to cut these distortions short in order to prevent an even greater waste of our resources.