616 A.2d 160

John O. VARTAN, trading as Independent
American Investments, a registered
fictitious name, Petitioner,

v.

COMMONWEALTH of Pennsylvania, acting Through the UNI-
FIED JUDICIAL SYSTEM by the Agency of the ADMINIS-
TRATIVE OFFICE OF PENNSYLVANIA COURTS, Respon-
dent.

Commonwealth Court of Pennsylvania.

Argued April 9, 1992.

Decided Oct. 2, 1992.

88

John P. Krill, Jr., for petitioner.

Robert J. Cindrich, for respondent.

Before FRIEDMAN, and KELLEY, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

John O. Vartan, trading as Independent American Investments (Vartan), appeals from the July 30, 1991 order of the Board of Claims which granted the preliminary objections of the Commonwealth of Pennsylvania, acting through the Unified Judicial System by the agency of the Administrative Office of Pennsylvania Courts (AOPC). The order dismissed the complaint for lack of jurisdiction and certified the matter to Commonwealth Court. We reverse and remand.

AOPC and Vartan entered into a written lease agreement on October 10, 1989 (Contract) for a parcel of land on which Vartan was to build a courthouse, to suit AOPC, which would be occupied by the Commonwealth Court of Pennsylvania. The lease was contingent upon AOPC's obtaining all govern-

ment approvals which, in its sole discretion, it deemed necessary for the project and the lease, whether from judicial, legislative, or executive branches. The initial term of the lease was 29 years, beginning upon completion of the courthouse or occupancy, whichever occurred first.

Under the terms of the Contract, however, AOPC had no obligation to seek or obtain the necessary approvals and could terminate the Contract without incurring liability if it did not obtain approval for the project. For its part, Vartan had no immediate responsibility under the Contract, no "deliverables," until "five months after the last of the contingencies referred to in Paragraph 4 has been fulfilled or waived," at which time Vartan was to present AOPC with the "Preliminary Plans and Specifications." (Contract of the parties, Paragraph 7(b)(i)).[1]

AOPC exercised its right to terminate the Contract by letter to Vartan, dated June 6, 1990, from the designated contract officer for AOPC, the Court Administrator of the Commonwealth. The letter stated:

Pursuant to Paragraphs 4(b) and 29 ["Notices"] of the above Lease, Tenant, ... [AOPC] hereby notifies ... [Vartan,] that *Tenant [AOPC] has sought the approval of the judicial branch of the Commonwealth of Pennsylvania which it deems necessary and appropriate with respect to the Lease, and has not received such approval.* Tenant therefore exercises its option pursuant to Paragraph 4(b) and *hereby terminates the Lease* by this written notification to Vartan. This notice is given by certified mail in accordance with the terms of the Lease, with a copy faxed to you this date.

(Emphasis added).

Vartan filed a complaint before the Board of Claims, averring that Vartan had relied, to its detriment, on one or more

---

1. If either party failed to "approve final plans and specification [sic] within nine months after the date hereof," the other party had the right to terminate the Contract by giving notice. If the Contract were terminated under this provision, Vartan could claim out-of-pocket architectural and engineering fees paid to third parties, not to exceed $100,000.00. (Contract of the parties, Paragraph 7(b)(ii)).

written communications from the then President Judge of the Commonwealth Court which stated that project approvals had been obtained and that the Contract would not be terminated. Vartan claimed that the Contract was not lawfully terminated because "by virtue of its conduct, [AOPC] is estopped [2] from asserting the benefit of the termination provisions of paragraph 4(b) of the Lease or any other provisions of the Lease." (Complaint, paragraph 18). Damages claimed were "at least $6,500,000.00." (Complaint, paragraph 19).

In response, AOPC filed preliminary objections as follows: (1) demurrer to Vartan's claim for breach of contract, asserting that the President Judge of the Commonwealth Court was not the authorized agent for the AOPC or the Commonwealth; (2) demurrer to Vartan's claim of promissory estoppel or unjust enrichment; and (3) a motion to strike for failure of Vartan to sue the right party, attacking the form of the caption in naming the Commonwealth.

■ The Board granted AOPC's preliminary objections and dismissed Vartan's complaint. The Board opined that it lacked subject matter jurisdiction, reasoning that because AOPC had terminated the contract, no contract existed upon which Vartan could bring its claim before the Board. In its order, the Board, *sua sponte*, certified the matter to this court "in accordance with the Pa.R.C.P. [sic] No. 1311. See 42 Pa.C.S. § 702(B)." [3] To hear this appeal, this court's current President Judge appointed a panel of judges none of whom were members of this court during the time involved in the underlying transaction.

2. Erroneously characterized by AOPC as a claim of promissory estoppel.

3. Presumably, the Board intended to certify to us under Pa.R.A.P. No. 1311, Interlocutory Appeals by Permission. However, inasmuch as the order of the Board granting the preliminary objections and dismissing Vartan's complaint put Vartan out of court, it was a final order and appealable as a matter of right. Pa.R.A.P. No. 341(a).

■ On appeal,[4] Vartan raised three questions for our consideration: (1) whether the Board of Claims has jurisdiction over a claim arising under a contract which has been terminated or rescinded; (2) whether a complaint asserting Vartan's reliance on acts by AOPC's representative may be dismissed on a demurrer which asserts the lack of authority of that representative; and (3) whether AOPC may be estopped from asserting that it lawfully terminated the Contract.

We address the questions of whether the Board committed error of law, first in granting AOPC's preliminary objections and, then, in dismissing Vartan's complaint for lack of jurisdiction.[5] In so doing, we consider the standard supposedly applied by the Board:

A demurrer is an assertion that a complaint does not set forth a cause of action upon which relief can be granted. *Balsbaugh vs. Rowland,* 447 Pa. 423, 290 A.2d 85 (1972). In disposing of a demurrer, every well pleaded, material, relevant fact set forth in the pleading to which it is filed, together with all reasonable inferences therefrom, are admitted as true. *Eden Roc Country Club v. Mullhauser,* 416 Pa. 61, 204 A.2d 465 (1964). A demurrer will be sustained only where a plaintiff's complaint or pleading shows with certainty that upon the facts averred therein the law will not permit the plaintiff to recover. *International Union of Operating Engineers vs. Linesville Construction Co.,* 457 Pa. 220, 322 A.2d 353 (1974); *Buchanan v. Brentwood Federal Savings and Loan Association,* 457 Pa. 135, 320 A.2d 117 (1974). A demurrer cannot supply a fact missing in the complaint. *Linda Coal & Supply Co. v. Tasa Coal Co.,* 416 Pa. 97, 204 A.2d 451 (1964).

4. Our scope of review of an order of the Board of Claims is limited to determining whether necessary factual findings are supported by substantial evidence, whether a party's constitutional rights were violated, or whether an error of law was committed. *Commonwealth of Pennsylvania, Department of Transportation v. Dyberry Sand and Gravel, Inc.,* 117 Pa.Commonwealth Ct. 101, 542 A.2d 650 (1988).

5. We do not reach the question of the alleged estoppel, which is a question for the trier of fact, not properly before us.

*Ronald J. Matschener v. City of Pittsburgh,* 36 Pa.Common-wealth Ct. 69, 387 A.2d 954 (1978), as quoted in the Opinion of the Board of Claims, July 30, 1991, Fred C. Pace, C.A.J., at page 4.

We see little evidence that the Board actually applied this standard in considering AOPC's preliminary objections. Instead, the Board's reasoning and conclusions indicate that it accepted all of AOPC's statements in the preliminary objections as true, drawing inferences therefrom, rather than properly giving that advantage to all well-pleaded facts of Vartan's complaint. In effect, the Board erred by reversing the burden which should have been borne by AOPC in seeking dismissal of the action. The Vartan complaint sets out a claim based on the written contract between the parties combined with averments of fact which, if proven, could possibly result in its recovery. Therefore, the questions of fact must be placed before the trier of fact and cannot be dismissed on a demurrer which merely asserts contrary facts. We therefore hold that the Board erred as a matter of law in its granting of the preliminary objections, excepting only AOPC's motion to stike for improper form of caption, which the Board did not address.

After improperly adopting all the facts and reasoning of AOPC's preliminary objections, the Board then decided that it lacked subject matter jurisdiction because no Contract existed between the parties, its having been terminated by AOPC. This reasoning is flawed. Even if it were proven at trial that the Contract was properly terminated by AOPC, the Contract would not thus be rendered void ab initio but merely voided at the election of a party, without breach. In order to preclude a party from asserting a cause of action arising from a contract, it would have to have been judicially declared a void contract, defined as:

One which never had any legal existence or effect.... Expression denotes that the parties to the transaction have gone through the form of making a contract, but that none has been made in law because of lack of some essential element of a contract, and such contract creates no legal

rights and either party thereto may ignore it at his pleasure, in so far as it is executory.

Black's Law Dictionary, (5th ed.1979).

 Just as a divorce is not an annulment, a voided contract is not a void contract. AOPC made no attempt to rescind the Contract, which the parties entered in good faith, and AOPC's letter terminating the Contract was carefully drafted to comply with Contract terms.[6] The effect of AOPC's termination of the Contract is, in fact, the subject matter of this action. The Contract itself was incorporated by reference in Vartan's complaint and became part of the well pleaded, material and relevant facts. This is a simple breach of contract action; the breach complained of is the termination under Paragraph 4(b), given the circumstances alleged in the complaint.

 Vartan argues that *Tri–State Asphalt Corp. v. Commonwealth of Pennsylvania Department of Transportation,* 135 Pa. Commonwealth Ct. 410, 582 A.2d 55 (1990) is analogous to this case. We agree. In *Tri–State Asphalt* we quashed Tri–State's application to this court for extraordinary relief on the basis that the Board of Claims had exclusive jurisdiction of a contractor's claim that its contract to perform highway resurfacing had been wrongfully terminated. An action brought under a terminated contract is still a contract action and within the Board's jurisdiction. The Board cannot simply deny its exclusive jurisdiction by denying the existence of the Contract.

In *Shovel Transfer & Storage, Inc. v. Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board,* 523 Pa. 235, 565 A.2d 1153 (1989), cited but apparently not heeded by the Board in its opinion here, the Pennsylvania Supreme Court provided considerable guidance regarding the Board's jurisdiction when a plaintiff files a claim against the Commonwealth for rights alleged to arise in contract. In *Shovel,* a

---

**6.** If a Commonwealth agency were to rescind a contract, any resulting claim for damages against the Commonwealth by the other party, seeking to be made whole as though the transaction had never occurred, would fall within the jurisdiction of the Board of Claims.

warehouse contractor attempted to establish rights arising from an unexecuted "contract" from which the Pennsylvania Liquor Control Board Comptroller and the State Secretary for Budget and Administration, both necessary signatories, had withheld their signatures because the contract was not the result of the normal bidding process. Shovel sought, by a mandamus action in this court, to force their signatures or to have the contract declared enforceable without the signatures. Our Supreme Court remanded the case to the Board of Claims as a contract action. In remanding the case to the Board of Claims, the court in *Shovel* stated:

> A 'claim ... arising from a contract' is often a dispute over the existence of the alleged contract as well as liability flowing from it
>
> . . . .
>
> We have construed the language of the enabling statute to mean that the Board of Claims is empowered to entertain *all contractual claims* against the Commonwealth irrespective of the type of relief sought or the fact that the Board of Claims may not have the power to grant the relief requested. *XPress Truck Lines, Inc. v. Pennsylvania Liquor Control Board,* 503 Pa. 399, 407–08, 469 A.2d 1000, 1004 (1983) (monetary damages or specific performance sought); *Ezy* [sic] *Parks v. Larson,* 499 Pa. 615, 626–28, 454 A.2d 928, 934–35 (1982) (specific performance sought). . . . and we hold that the Board of Claims has jurisdiction to determine whether a contract has been 'entered into' for purposes of the Act.
>
> Our finding ... is supported by the fact that otherwise there would be no forum available to establish the fact of a valid contract against the Commonwealth. Since at common law sovereign immunity barred a claimant from asserting a claim against the Commonwealth based upon contract, 1 Pa.C.S. section 2310, no other forum would be available to test the validity of an alleged contract if it did not fit within the exception of the statute provided to exempt the immunity. Thus any time the Commonwealth challenged the existence of the underlying contract, the claimant would have no

forum to establish its legitimacy. The statute creating the Board of Claims would thus be construed as allowing a claimant to sue only if the Commonwealth concedes the existence of a valid contract in the first instance.

We find no basis for such a limited construction....

Shovel's action thus assumes the nature of a breach of contract action.... The proper forum for this type of action, therefore, is the Board of Claims.

*Id.* at 239–241, 565 A.2d at 1155–56.

The case *sub judice* is even clearer. Unlike *Shovel,* the parties here indisputably entered into a properly executed contract, and the claim raised is based on the parties' rights thereunder, whether for termination or for damages for breach.

We also discussed the jurisdiction of the Board of Claims' at considerable length in our recent decision in *Harry D. Miller, III and A Potty on the Spot, Inc. v. Department of Environmental Resources,* 133 Pa.Commonwealth Ct. 327, 578 A.2d 550 (1990) *appeal denied,* 526 Pa. 643, 584 A.2d 324 (1990). We commend it to those who seek to understand the full historical perspective of the Board of Claims. In *Miller,* aside from our recognition that the current Board enjoys "exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more," Section 3, Act of October 5, 1978, P.L. 1104, *as amended,* 72 P.S. § 4651–4, we also observed that:

The Board exercises both law and equity jurisdiction, Section 405 of The Fiscal Code, 72 P.S. section 405, and claims arising under the Board's jurisdiction are excepted from the bar of sovereign immunity. Section 4(c) of the Act of September 28, 1978, P.L. 788; *see* 1 Pa.C.S. section 2310. We observe that *the equity jurisdiction of the Board extends to all cases instituted in the form of contract actions, namely quasi contract claims and claims in quantum*

*meruit. See Lowry v. Commonwealth,* 365 Pa. 474, 76 A.2d 363 (1950). [additional citations omitted].
*Miller* at 333, 578 A.2d at 553 (emphasis added).

In *Miller,* after considering when jurisdiction was appropriate, we determined that there was no contractual basis for the claim in that case, which was a tort claim for damages resulting from the improper exercise of a police power. Thus, we held that the Board had erroneously accepted jurisdiction of the action.

Here, the Board expressed frustration at its attempt to reconcile *Shovel* and *Miller.* Because the Board viewed the cases identically, its dilemma is understandable. The cases are not the same; *Shovel* was a contract action while *Miller* sounded in tort. Only *Shovel*'s analysis applies here. It is clear from the enabling statute that the Board has been given exclusive jurisdiction in claims against the Commonwealth arising in assumpsit—claims arising out of contracts or in quasi-contract or in quantum meruit (*Shovel*), and that the Board does not have jurisdiction over actions in trespass (*Miller*).

Accordingly, we reverse the Board's granting of AOPC's preliminary objections and its dismissal of Vartan's complaint. We hold that the Board has jurisdiction over this matter and remand for an adjudication of the remaining preliminary objection not previously addressed.

## ORDER

AND NOW, this 2nd day of October, 1992, the order of the Board of Claims, dated July 30, 1991, is reversed. We remand this case to the Board of Claims for adjudication of the remaining preliminary objection in the form of a motion to strike for failure to conform to rule of court. We relinquish jurisdiction.

CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ., did not participate in the decision in this case.