**DEPARTMENT OF HEALTH,**
Petitioner

v.

**DATA–QUEST, INC., Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 10, 2008.
Decided April 14, 2009.

Tanya C. Leshko, Harrisburg, for petitioner.

William W. Warren, Jr., Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge [1], COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SMITH–RIBNER.

The Court granted the Department of Health (DOH) permission to file this interlocutory appeal of the order of the Board of Claims (Board) overruling DOH's preliminary objections to the statement of claim filed by Data–Quest, Inc. for damages under promissory estoppel and quasi-contract theories for services performed in regard to its development of a software system. The issue is whether the Board has subject matter jurisdiction over quasi-contract claims against the Commonwealth that are not based on a written agreement under Section 1724(a)(1) of the Commonwealth Procurement Code, 62 Pa.C.S. § 1724(a)(1), which was added by Section 12.2 of the Act of December 3, 2002, P.L. 1147 (2002 Act).[2]

According to Data–Quest, in 2003 DOH's Bureau of Drug and Alcohol Programs (Bureau) solicited Data–Quest and two other software vendors to develop a software system to replace its data collection

1. The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of Senior Judge.

2. Section 1724 of the Procurement Code provides, in relevant part, as follows:
 (a) **Exclusive jurisdiction.**—The board shall have exclusive jurisdiction to arbitrate claims arising from all of the following:
 · (1) A contract entered into by a Commonwealth agency in accordance with this part and filed with the board in accordance with section 1712.1 (relating to contract controversies)....
 ....
 (c) **Limitations**.... The board shall ... exercise no jurisdiction over claims for payment or damages to providers of medical assistance services arising out of the operation of the medical assistance program established by ... the Public Welfare Code.
A "contract" is defined in Section 103, *as amended*, 62 Pa.C.S. § 103, as follows:
 [T]he following words and phrases ... shall have the meanings given to them in this section unless the context clearly indicates otherwise: .
 ....
 "Contract." A type of written agreement ... executed by all parties in accordance with the act of October 15, 1980 (P.L. 950, No. 164 [*as amended* ] ), known as the Commonwealth Attorneys Act [71 P.S. §§ 732–101–732–506].
Section 402(6) of the Commonwealth Attorneys Act, 71 P.S. § 732–402(6), provides that

the chief counsel of an independent administrative agency shall "[r]eview for form and legality all Commonwealth ... contracts to be executed by the agency."
 Section 21(a) of the 2002 Act repealed Section 4 of the Act of May 20, 1937, P.L. 728, *as amended, formerly* 72 P.S. § 4651–4 ("Board of Claims Act"), which provided as follows:
 The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth.... The board shall also have exclusive jurisdiction to hear and determine those claims authorized by the act of March 30, 1811 (P.L. 145, Ch. XCIX) ... and continued by Article X, act of April 9, 1929 (P.L. 343, No. 176 [*as amended* ] ), known as "The Fiscal Code," [72 P.S. §§ 1001–1004,] wherein the Auditor General and State Treasurer were granted the power to adjust and settle certain claims against the Commonwealth.
Section 1724(a) of the Procurement Code omits the sentence providing for "The Fiscal Code" jurisdiction. Section 1003, 72 P.S. § 1003, states: "The Auditor General and State Treasurer shall continue to have the power to adjust and settle claims against the Commonwealth ...," and Section 405, 72 P.S. § 405, states that the Department of the Auditor General shall examine and adjust, under law and equity, the accounts of all parties with claims against the Commonwealth.

or "client information system." DOH personnel with apparent authority selected Data–Quest's software named ClientSuite and communicated DOH's intention to purchase that system. Until 2007 Data–Quest worked closely with DOH and the Bureau to customize ClientSuite, meeting with DOH personnel dozens of times to design and create an implementation plan. At DOH's request Data–Quest participated in a federal technical assistance review to implement national outcome measures, further indicating DOH's intention to use ClientSuite. Data–Quest devoted most of its time since 2003 to developing Client-Suite. In 2006 DOH reassured Data–Quest that it intended to purchase Client-Suite and met with Data–Quest numerous times during the year, but in 2007 DOH stated that it would not acquire Client-Suite. Data–Quest demanded payment for the costs of its services between 2003 and 2006, but DOH refused, which resulted in Data–Quest filing its claims on November 6, 2007.

DOH alleged in preliminary objections that the Board lacked subject matter jurisdiction over Data–Quest's claims because it has not averred a written agreement with DOH and that the Procurement Code limits Board jurisdiction to claims arising out of a written agreement with the Commonwealth. DOH argued that the 2002 Act moved the Board's enabling provisions from the Board of Claims Act to the Procurement Code and that the legislature intended thereby to eliminate the Board's jurisdiction over any claims arising from contracts implied-in-law, or quasi-contracts. Furthermore, the jurisdictional language "all claims against the Commonwealth arising from contracts," as commonly understood to include both express and implied contract claims, is now subject to the definition of the term "contract" under the Procurement Code as a written executed agreement. Also, the Board's

Fiscal Code jurisdiction added in 1978 was now eliminated.

The Board relied upon *Employers Ins. of Wausau v. Department of Transportation*, 581 Pa. 381, 393, 865 A.2d 825, 832–833 (2005) (*Wausau* ), where the court held that under the Board of Claims Act "claims arising from contracts involving the Commonwealth could sound in both assumpsit and equity, and ... regardless of form, these claims should be decided by the Board of Claims." Also, the court noted that Section 1724(a)(1) of the Procurement Code replaced Section 4 of the Board of Claims Act and that they are substantively identical. Noting that the Board and its predecessor tribunals date back for almost 200 years, the Board overruled DOH's preliminary objections and reasoned in part as follows:

[T]he equitable remedy of quasi-contract or claims for unjust enrichment against the Commonwealth has been available to its citizens for meritorious claims <u>for this same two centuries.</u> ... [T]his history of legislation and practice shows us that the General Assembly intended this equitable remedy, begun with the original Board of Claims in 1811, be preserved and consolidated in the present day Board by the explicit statement in the 1978 amendment to the Board of Claims Act.... It is for this reason, perhaps more than any other, that we find it so difficult to believe that the Legislature <u>intended</u> to eliminate the Board's long-standing equity jurisdiction by Act 142 [of 2002] without an <u>express</u> provision or statement to that effect. The omission ... is even more curious when we note that, in contrast to the absence of any mention of removing equity jurisdiction, the Legislature very specifically included in subsection (c) of § 1724 an express statement that the Board would no longer have power to

exercise its jurisdiction over certain enumerated types of· contract claims, naming, <u>inter alia,</u> claims from providers of medical assistance under the Public Welfare Code. In fact, we find·this omission a very significant indicator that the Legislature did <u>not</u> intend to modify the Board's jurisdiction to exclude claims arising from implied contracts but merely to eliminate DPW claims and otherwise modernize and incorporate the Board's enabling provisions into the Procurement Code.

Board's Opinion, pp. 5–6 (citations omitted) (footnote omitted).

The Board took note of the salient statutory construction principles set forth in Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921. It cited *Pennsylvania Associated Builders and Contractors, Inc. v. Commonwealth Department of General Services,* 593 Pa. 580, 932 A.2d 1271 (2007), where the Supreme Court reaffirmed the principle that clear and unambiguous statutory language is not to be ignored in pursuit of the spirit of a statute and indicated that the Procurement Code recognizes that the term "contract"

is not necessarily limited to the general definition in Section 103, *as amended,* 62 Pa.C.S.· § 103. The Board determined that its historic jurisdiction over claims arising from implied contracts provided the context for interpreting the general definition of "contract" and that the legislature would not eliminate the Board's jurisdiction over implied contracts by employing an obtuse method of relocating its jurisdictional phrasing and relying on a general definitional section. Further, sovereign immunity has been waived under Section 1702.[3] The Board therefore overruled the preliminary objections.[4]

■ DOH argues that Section 1724(a)(1) of the Procurement Code plainly grants jurisdiction in the Board only over claims arising from contracts. DOH contends that, pursuant to the general definition of "contract" in Section 103, the Board lacks jurisdiction because no written executed agreement exists between the parties.[5] Moreover, the Board erred in relying on history and presumed legislative intent to hold that the general definition does ·not apply to Section 1724 when the court· in

**3.** Section 1702(b), *as amended,* 62 Pa.C.S. § 1702(b), provides that sovereign immunity is waived "as a bar to claims against Commonwealth agencies brought in accordance with section 1711.1 (relating to protests of solicitations or awards) and 1712.1 (relating to contract controversies) [in Subchapter B] and Subchapter C (relating to Board of Claims)...."

**4.** The Court's review is limited to determining whether constitutional rights were violated, errors of law were committed or necessary findings are supported by substantial evidence. *Vartan v. Commonwealth ex rel. Administrative Office of Pennsylvania Courts,* 151 Pa.Cmwlth. 86, 616 A.2d 160 (1992). Preliminary objections review is limited, and for this review the Court must consider that all material facts set forth in the complaint and all inferences reasonably deducible therefrom are admitted as true. *Wausau.* Where doubt

exists as to whether a demurrer should be sustained, that doubt must be resolved in favor of overruling the demurrer. *Id.*

**5.** Both parties and the Board refer to Data–Quest's claims, including the promissory estoppel claim, as quasi-contract claims. The Court will refer to the claims as quasi-contract claims for the limited purpose of this opinion. A contract implied-in-law, or quasi contract, "imposes a duty, despite the absence of either an express or implied agreement, when one party receives an unjust enrichment at the expense of another party." *Department of Environmental Resources v. Winn,* 142 Pa. Cmwlth. 375, 381, 597 A.2d 281, 284 n3 (1991). Promissory estoppel exists to avoid an injustice where no consideration is found but a promise is made and it is justifiably relied upon. *Cardamone v. University of Pittsburgh,* 253 Pa.Super. 65, 384 A.2d 1228 (1978).

*Pennsylvania Associated Builders* disapproved of relying on extraneous factors where a statute's language is clear and unambiguous. In short, the general definition remains the same for every question. Also, Sections 1711.1 and 1712.1, 62 Pa.C.S. §§ 1711.1 and 1712.1 (dealing with solicitation or award protests and contract controversies), do not broaden the Board's jurisdiction, and any exceptions to sovereign immunity under Section 1702 must be narrowly construed.

Next, DOH argues that the 2002 Act extinguished Board jurisdiction over equity claims brought in *assumpsit* that do not arise from a written contract. The Board's jurisdiction over equity claims not arising from contracts stemmed from Section 1003 of The Fiscal Code, Act of April 29, 1929, P.L. 343, *as amended*, 72 P.S. § 1003, incorporated into the Board of Claims Act in 1978. In *Miller v. Department of Environmental Resources*, 133 Pa. Cmwlth. 327, 578 A.2d 550 (1990), this Court acknowledged that the Board's equity jurisdiction under The Fiscal Code extends to quasi-contract and quantum meruit claims. The legislature intentionally excluded from Section 1724(a) of the Procurement Code language referencing Fiscal Code jurisdiction when it relocated the Board's jurisdictional provision from the Board of Claims Act, and *Wausau* held that the Board retains jurisdiction only over equitable claims arising from written contracts.

Data–Quest's counter-argument is that the 2002 Act did not extinguish the Board's jurisdiction over quasi-contract claims and that under the Procurement Code a contract is not always a written agreement. To the contrary, the Code does not expressly preclude the Board from hearing quasi-contract claims, and *Miller* did not hold that The Fiscal Code is the only basis for the Board's jurisdiction

over such claims. Data–Quest notes that *Wausau* did not consider the question now before this Court and that DOH misstated the Board's reliance upon *Pennsylvania Associated Builders*. The Board recognized the court's holding that the term "contract" is not limited to the Section 103 general definition if the context clearly indicates otherwise, and it considered the historical context in interpreting Section 1724(a). Also, the regulation at 61 Pa. Code § 899.105(2) provides for the Board's jurisdiction over claims arising from implied contracts. More particularly, DOH's interpretation would undo 200 years of the Board's jurisdiction.

Data–Quest cites *Buckwalter v. Borough of Phoenixville*, 940 A.2d 617, 623 (Pa. Cmwlth.), *appeal granted*, 598 Pa. 210, 955 A.2d 1014 (2008), for the principle that when the legislature seeks to depart from a "long standing" policy it must express its intent to do so explicitly. Also, DOH's interpretation would unconstitutionally deprive Data–Quest of its reasonable expectation of entitlement to bringing its claims in a forum that has existed for 200 years, and sovereign immunity does not apply as the government would face no operational difficulty from vendors' quasi-contract claims. In its reply brief, DOH reiterates many of the arguments in its main brief, and it asserts, *inter alia*, that the 2002 Act restricted the definition of "contract" even more by requiring its execution pursuant to the Commonwealth Attorneys Act and that limiting a cause of action to claims arising from written contracts does not offend Data–Quest's due process rights.

■ The Court begins its analysis by emphasizing that the Board and its predecessors have exercised jurisdiction over quasi-contract claims since 1811. *See Miller.* The Board was established in furtherance of a public policy extending more than 200 years ago to allow claim-

ants who ordinarily would have been barred by sovereign immunity to have a method of redress against the Commonwealth. *Lowry v. Commonwealth*, 365 Pa. 474, 76 A.2d 363 (1950). The Supreme Court in *Wausau* construed the Board's equity jurisdiction under the Procurement Code and expounded on its legislative scheme as follows:

> [The legislature] recognized that claims arising from contracts involving the Commonwealth could sound in both assumpsit and equity, and expressly provided that, regardless of form, these claims should be decided by the Board of Claims. It is thus readily apparent that Pennsylvania's legislative scheme intended to vest the Board of Claims with expansive jurisdiction to decide disputes concerning contracts involving the Commonwealth....

*Wausau*, 581 Pa. at 393, 865 A.2d at 832–833.

Pursuant to 1 Pa.C.S. § 1928(b)(7), statutory provisions that decrease the jurisdiction of a court of record must be strictly construed. In *Armstrong School District v. Armstrong Educ. Ass'n.*, 528 Pa. 170, 178, 595 A.2d 1139, 1144 (1991), the Supreme Court observed that "if the scope of equity's common law jurisdiction was to have been diminished [by a statute], the language therein should have been ... explicit...." Additionally, in *Consumers Educ. & Protective Ass'n v. Schwartz*, 495 Pa. 10, 19, 432 A.2d 173, 178 (1981), the court noted a well settled principle that "when the Legislature itself seeks to depart from salutary public policy principles, it must express its intention to do so *explicitly*, and any power so granted will be *strictly construed*." (Emphasis in original.) *See also Lowry.*

Prior to enactment of the 2002 Act, the Board's jurisdiction resided in former Section 4 of the Board of Claims Act, Act of May 20, 1937, P.L. 728, *as amended, formerly* 72 P.S. § 4651–4, repealed by Section 21(a) of the 2002 Act, which provided as follows: "*The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth ....*" 72 P.S. § 4651–4. Following the enactment, this provision was relocated to Section 1724(a) of the Procurement Code as follows: "*The board shall have exclusive jurisdiction to arbitrate claims arising from all of the following: (1) A contract entered into by a Commonwealth agency in accordance with this part ....*" In *Wausau* the court concluded that the relevant portion of Section 1724(a)(1) is substantively identical to Section 4 of the Board of Claims Act. *See also Department of General Services v. Limbach Co.*, 862 A.2d 713 (Pa.Cmwlth.2004) (observing that Board jurisdiction under the Procurement Code is unchanged), *aff'd*, 586 Pa. 479, 895 A.2d 527 (2006).

In *Wausau* the Supreme Court cited with approval the decision in *Armour Rentals, Inc. v. General State Authority*, 4 Pa.Cmwlth. 517, 529–530, 287 A.2d 862, 868 (1972), which interpreted the clause "claims against the Commonwealth arising from contracts" in the Board of Claims Act as including "any claim based upon alleged contract liability of the Commonwealth regardless of whether the claimant happens to have executed a written contract." Reading the Board's jurisdiction broadly, the court held in *Wausau* that the Board retains jurisdiction over an equitable subrogation claim under Section 1724(a)(1) of the Procurement Code and reasoned that the legislature, in impairing sovereign immunity, intended broad jurisdiction in the Board over claims against the Commonwealth. That rationale is consistent with *Lowry* where the court stressed that be-

cause of sovereign immunity a greater need existed for a liberal construction of the remedial act there.

Following well-reasoned case law precedent, the Court concludes that the provision "claims arising from ... [a] contract" in Section 1724(a)(1) of the Procurement Code must be construed to include claims arising from contracts implied-in-law, or quasi-contract claims. Section 1724(a)(1) is substantively identical to the now repealed Section 4 of the Board of Claims Act, which was construed as providing jurisdiction over quasi-contract claims. *See Wausau; Limbach.* Notwithstanding the Section 103 definition of "contract," the Court observes that Section 103 provides in its introductory clause that words in the Procurement Code may have different meanings than those defined therein if the context clearly indicates otherwise. In *Pennsylvania Associated Builders* the court determined that the phrase "unless the context clearly indicates otherwise" signals the legislature's contemplation that a term defined in Section 103 may have a meaning that is different from the definition given it, thereby directing the courts to pay attention to what surrounds the term in order to determine whether the Procurement Code's definition applied.[6]

 Under *Wausau* the Board's jurisdictional provisions must be construed broadly, and under Section 1702(b) of Procurement Code sovereign immunity is waived as a bar to claims brought pursuant to provisions in Chapter 17 ("Legal and Contractual Remedies"). *See* n3. Viewing Chapter 17's remedial provisions as a whole and having examined what surrounds the term "contract" in Chapter 17, the Court cannot accept the premise that the definition of "contract" in Section 103 applies to Chapter 17 provisions. The definition is incompatible with the remedial provisions of Sections 1711.1(a), 1711.2(1), 62 Pa.C.S. §§ 1711.1(a), 1711.2(1).

Section 1711.1(a) provides that a bidder or prospective bidder who is aggrieved in connection with the solicitation or an award of a contract may protest to the head of the purchasing agency. Section 1711.2(1) provides that if the head of a purchasing agency determines that a solicitation or an award of a contract is contrary to law then the agency head may cancel or revise the solicitation or award of a contract if that determination is made prior to execution of a contract. Plainly, applying the Section 103 definition to a contract that may be awarded prior to its execution would be inherently inconsistent. Section 1702(b) and the incorporation of Section 1712.1 into Section 1724(a)(1) clearly indicate that the term "contract" as it appears in both Subchapters B and C of Chapter 17 has one meaning.

The Court finds it compelling that defining a contract as a written executed agreement would extinguish claims regarding the formation or existence of a contract, which result was rejected by the court in *Shovel Transfer & Storage, Inc. v. Simpson,* 523 Pa. 235, 565 A.2d 1153

6. The Court rejects DOH's argument that the holding in *Wausau* is applicable only in cases involving a written contract with a Commonwealth agency. To the contrary, the court directed reading the Board's jurisdiction broadly to achieve its remedial ends. To the extent that Data–Quest's claims sound in contract law, the holding in *Wausau* applies. *See Matarazzo v. Millers Mut. Group, Inc.,* 927 A.2d 689 (Pa.Cmwlth.2007) (holding that det-rimental reliance of promisee in a promissory estoppel claim creates consideration necessary for the formation of a contract); *Vartan* (holding that a quasi contract is a contract implied-in-law). The Court also rejects DOH's contention that the Board's jurisdiction over quasi-contract claims derived solely from The Fiscal Code because no case law supports this contention.

(1989), where an agency argued that no contract existed as the agreement at issue was not signed by all signatories. The court concluded that the Board's jurisdiction must encompass power to determine whether a contract existed or had been entered into, and it stated:

> A "claim ... arising from a contract" is often a dispute over the existence of the alleged contract as well as the liability flowing from it. In order for the Board of Claims to accept jurisdiction over a particular cause of action, it necessarily must determine as a factual predicate whether there is a valid contract in existence....
>
> ....
>
> Since at common law sovereign immunity barred a claimant from asserting a claim against the Commonwealth based upon contract, ... no other forum would be available to test the validity of an alleged contract if it did not fit within the exception of the statute provided to exempt the immunity. Thus, any time the Commonwealth challenged the existence of the underlying contract, the claimant would have no forum to establish its legitimacy. The statute creating the Board of Claims would thus be construed as allowing a claimant to sue only if the Commonwealth concedes the existence of a valid contract in the first instance. We find no basis for such a limited construction.

*Id.,* 523 Pa. at 240–241, 565 A.2d at 1155–1156 (citation omitted). The Supreme Court concluded that the focus is upon the origin of the rights and that because the claimant's objective was to establish a contractual relationship the action assumed the nature of a breach of contract claim to be resolved by the Board.

The Court agrees with Data–Quest that applying the definition of the term "contract" in Section 103 to the provisions in Chapter 17 would deprive the Board of its ability to determine whether a valid contract existed, either express or implied. As the Supreme Court noted in *Shovel Transfer* a claim would be allowed only if the Commonwealth conceded the existence of a valid contract in the first instance. Following the rationale of *Shovel Transfer,* among other authority, the Court rejects DOH's limited construction of the Board's jurisdiction and therefore concludes that Data–Quest's quasi-contract claims must be resolved by the Board.

In conclusion, the Court must reject DOH's argument that the Board's jurisdiction over quasi-contract claims was extinguished by the 2002 Act. The Court reaches its conclusion after considering the relevant statutory language in the Procurement Code, case law authority interpreting the 200–year history of the Board's jurisdiction over quasi-contract claims, relevant principles of statutory construction and the absence of any explicit or implied legislative intent in the 2002 Act to extinguish Board jurisdiction over quasi-contract claims. Because the Board did not commit an error of law in overruling DOH's preliminary objections based on lack of subject matter jurisdiction, the Court shall affirm the order of the Board and remand this matter for the Board to proceed with Data–Quest's claim.

## ORDER

AND NOW this 14th day of April, 2009, the Court affirms the order of the Board of Claims and remands this matter to the Board to proceed in accordance with the foregoing opinion. Jurisdiction is relinquished.