**FIRETREE, LTD., Petitioner**

v.

**DEPARTMENT OF GENERAL SERVICES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2006.
Decided March 9, 2007.

---

Daniel F. Schranghamer, Williamsport, for petitioner.

David L. Narkiewicz, Asst. Chief Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Firetree, Ltd. appeals from an order of the Board of Claims dismissing Firetree's breach of contract action against the Commonwealth of Pennsylvania, Department of General Services (Department). In doing so, the Board sustained the Department's preliminary objection in the nature of a demurrer. In this case we consider whether a form agreement of sale, executed by the prospective purchaser but not by the Secretary of General Services, effected an enforceable contract for the sale of Commonwealth-owned land.

This case arises from Firetree's unsuccessful bid to purchase a portion of the land and buildings comprising the former Laurelton Center located in Hartley Town-ship, Union County. Laurelton Center was established in 1913 by the Department of Public Welfare for the rehabilitation, care and treatment of persons with mental retardation. It consists of 52 buildings on over 342 acres of land. The Department of Public Welfare closed Laurelton Center in 1998, and it has remained vacant and unoccupied since that time.

In 1997, the General Assembly enacted Act 66 of 1997 (Act 66)[1] for the purpose of conveying certain Commonwealth-owned property, including a portion of Laurelton Center. Section 2(c) of Act 66 authorized the Department to sell Laurelton Center tracts through sealed bidding, auction or request for proposal.[2] Pursuant to this statutory authority, the Department, through its real estate broker, Binswanger of Pennsylvania, Inc., issued an invitation for bids (Solicitation Document) in August 2004. Included with the bid package was a form Agreement of Sale, drafted by the Department, which prospective bidders were required to execute and submit with their bid. On October 14, 2004, Firetree submitted a sealed bid of $883,000, a 10 percent deposit of $88,300, and a copy of the form Agreement of Sale signed by its Chairman, William C. Brown.

In November 2004, the Department notified Firetree that it was the preferred bidder and cashed Firetree's deposit check. The sale was never consummated. On April 6, 2005, Firetree filed a complaint in equity in the Commonwealth Court, Docket No. 165 M.D.2005, against the Department and Representative Russ Fairchild. Firetree sought specific perform-

1. Act of December 19, 1997, P.L. 623.

2. Section 2 of Act 66 was subsequently repealed by Section 3(a) of the Act of July 5, 2005, P.L. 60 (Act 23). Act 23 was introduced as House Bill 1745 by Representative Russ Fairchild, in whose legislative district Laurelton Center is located. Act 23 provided for the transfer of Laurelton Center tracts to Mountain Valley, Inc., a Maryland corporation. Mountain Valley, Inc. is not a party to this action.

ance of the terms in the Agreement of Sale and an injunction prohibiting the Department from transferring Laurelton Center property to any other entity.[3] The Department filed preliminary objections asserting that there was no enforceable contract between the parties but, in any case, this Court lacked subject matter jurisdiction over contract claims against the Commonwealth. The Department further argued that specific performance was not an available remedy against the Department because it was barred by sovereign immunity.

While its complaint was pending before this Court, Firetree filed a claim with the Board of Claims on July 22, 2005, Docket No. 3779, alleging that the Department breached its contract and duty to convey Laurelton Center to Firetree and seeking damages of $2,830,000. The Department filed preliminary objections demurring to Firetree's claim and requesting a stay of the litigation in light of Firetree's pending action before this Court. The Board agreed with the Department that the two actions involved the same core issue—whether a contractual relationship existed between the parties—and that allowing both actions to proceed would likely be duplicative and a waste of judicial resources. The Board stayed Firetree's

claim pending a ruling from this Court and reserved decision on the Department's remaining preliminary objections.

On November 3, 2005, this Court, in a single-judge opinion, concluded that jurisdiction over Firetree's contract claims lay with the Board of Claims. This Court expressed doubt that a contract had been formed between Firetree and the Department based on the "clear and unequivocal language" of the Solicitation Document and the conduct of the parties after Firetree was named the preferred bidder for Laurelton Center.[4] In the absence of a valid contract, and the concomitant absence of a clear right to relief and the unlikelihood of success on the merits, this Court concluded that Firetree was not entitled to injunctive relief against the Department. The Court transferred Firetree's contract claims to the Board of Claims and the tort claims against Representative Fairchild to the Court of Common Pleas, 17th Judicial District, Union County Branch.[5]

Following this Court's decision, the Board lifted the stay of Firetree's claim at Docket No. 3779. In its Statement of Claim before the Board, Firetree acknowledged that the form Agreement of Sale it executed and submitted with its bid was

3. Firetree sought damages from Representative Fairchild for his alleged tortious interference with contractual relations and an injunction prohibiting Representative Fairchild from interfering with prospective contractual relations. Those claims were ultimately transferred to the Court of Common Pleas, 17th Judicial District, Union County Branch. See n. 5, infra.

4. Visiting Judge Barry Feudale noted that on December 27, 2004, Firetree sent a letter to the Secretary of General Services, Bureau of Real Estate, indicating that "we do not have a contract." Firetree, Ltd. v. Department of General Services and Russ Fairchild (No. 165 M.D.2005, filed November 3, 2005) at 6 n. 7;

Supplemental Reproduced Record at 163B (S.R.R.___). Later, on January 25, 2005, William C. Brown, Chairman of Firetree, sent a letter to the Department demanding a return of Firetree's deposit, which the Department interpreted as a withdrawal from consideration as a purchaser. Id. On March 2, 2005, the Department returned Firetree's deposit.

5. The common pleas court dismissed Firetree's tort claims against Representative Fairchild on April 27, 2006. We affirm the common pleas court's order in an opinion filed today in Firetree's companion appeal. Firetree, Ltd. v. Russ Fairchild, 920 A.2d 913 (Pa.Cmwlth., No. 996 C.D.2006, filed March 9, 2007).

never signed by the Secretary of General Services, Donald Cunningham.[6] Nevertheless, Firetree asserted that it had an enforceable contract with the Department for the purchase of Laurelton Center. In support of that assertion, Firetree averred that the form Agreement of Sale required *approval* by the Office of General Counsel, the Office of Attorney General, the Secretary of General Services and the Governor; nowhere does the document require the *signature* of these officials or an authorized representative. Firetree further averred that between November 1, 2004, and April 25, 2005, Governor Rendell, Secretary Cunningham and other representatives of the Department each informed Firetree that the Agreement of Sale had been approved and that execution of the agreement was a "mere formality." Statement of Claim, ¶¶ 41, 64.

The Department demurred to Firetree's claim on the basis that there was no enforceable contract between the parties because the Secretary of General Services had never executed the form Agreement of Sale. The Department argued that the language of the form Agreement of Sale and the Solicitation Document clearly indicated an intent that all named parties were required to execute the Agreement of Sale in order for it to be effective. The Board agreed and dismissed Firetree's claim with prejudice.[7] This appeal by Firetree followed.

■ On appeal,[8] Firetree argues that the Board erred by dismissing its claim based upon the lack of an enforceable contract between Firetree and the Department. Firetree maintains, as it did before the Board, that the pertinent language in the form Agreement of Sale required only the approval of the Secretary of General Services, not his signature, and that Fire-

---

6. Firetree presumes that the Secretary of General Services was supposed to sign the form Agreement of Sale on behalf of the Governor, pursuant to a power of attorney executed by Governor Edward G. Rendell on February 3, 2003, authorizing the Secretary to execute "sales agreements" on his behalf. Reproduced Record at 113a (R.R. ___). For purposes of our analysis, it matters not whether the key "missing" signature is that of the Secretary of General Services in his own capacity, the Governor, or the Secretary of General Services in his capacity as the Governor's designee.

7. Although the Board engaged in a complete analysis of whether the partially executed form Agreement of Sale constituted an enforceable contract, it suggested that the issue may have already been decided by this Court. As discussed above, Judge Feudale observed in his single-judge opinion that the "unequivocal language" of the Solicitation Document and the conduct of the parties "belie[d] the existence of a contract between [the Department] and Firetree as a matter of law." *Firetree, Ltd. v. Department of General Services and Russ Fairchild* (Pa.Cmwlth., No. 165 M.D. 2005, filed November 3, 2005) at 6; S.R.R. 163B. Seizing upon this language, the Depart-

ment argues that Firetree should have been barred from relitigating that issue under either the doctrine of the law of the case or collateral estoppel. We agree with Firetree that these doctrines are not applicable. Judge Feudale's order sustained the Department's preliminary objection to the jurisdiction of this Court to hear Firetree's contract claims, transferred Firetree's contract and tort claims to the appropriate tribunals, and denied Firetree's request for injunctive relief. Observations by Judge Feudale regarding the merits of Firetree's contract claims were *obiter dicta* and not necessary to this Court's order. As such, those statements did not form the law of the case, nor did they estop Firetree from pursuing its contract claims before the Board.

8. Our scope of review of an order of the Board of Claims is limited to determining whether necessary factual findings are supported by substantial evidence, whether a party's constitutional rights were violated, or whether an error of law was committed. *Vartan v. Commonwealth*, 151 Pa.Cmwlth. 86, 616 A.2d 160, 163 n. 4 (1992).

tree pled facts indicating that it had the requisite approval. Firetree also contends that the Board erred by considering language contained in the Solicitation Document because that document was not incorporated by reference into the form Agreement of Sale.

In determining whether the Board erred by sustaining the Department's demurrer, we apply the same standard as the Board in assessing the legal sufficiency of Firetree's Statement of Claim. A demurrer is an assertion that a complaint does not set forth a cause of action upon which relief can be granted. *Vartan v. Commonwealth,* 151 Pa.Cmwlth. 86, 616 A.2d 160, 163 (1992). In disposing of a demurrer, every well pleaded, material, relevant fact set forth in the pleading to which it is filed, together with all reasonable inferences therefrom, are admitted as true. *Id.* A demurrer will be sustained only where a plaintiff's complaint or pleading shows with certainty that upon the facts averred therein the law will not permit the plaintiff to recover. *Id.* If there is any doubt, this should be resolved in favor of overruling the demurrer. *Gekas v. Shapp,* 469 Pa. 1, 6, 364 A.2d 691, 693 (1976). A demurrer does not admit conclusions of law. *Philmar Mid–Atlantic, Inc. v. York Street Associates,* 389 Pa.Super. 297, 566 A.2d 1253, 1254 (1989).

The legal sufficiency of Firetree's claim for breach of contract hinges upon whether there was an enforceable contract between Firetree and the Department. The specific issue in this case is whether the signature of the Secretary of General Services was required for the formation of an enforceable contract. It is the well-settled law of this Commonwealth that a contract is created where there is mutual assent to the terms of a contract by the parties with the capacity to contract. *Shovel Transfer and Storage, Inc. v. Penn-*

*sylvania Liquor Control Board,* 559 Pa. 56, 62–63, 739 A.2d 133, 136 (1999). As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties. *Id.* at 63, 739 A.2d at 136. The Board looked to the intent of the parties to resolve this question. In finding that the Department intended to require the Secretary's signature, the Board considered the language in the form Agreement of Sale together with that of the Solicitation Document.

We consider, first, the form Agreement of Sale. The form Agreement of Sale contains several "Covenants, Conditions and Restrictions," one of which provides as follows:

> Buyer acknowledges, that this Agreement is subject to the *approval* of the Office of General Counsel, Office of Attorney General, Secretary of General Services and the Governor and that if not *properly approved by* these officials or their designees, the Purchase Agreement will not be valid.

Reproduced Record at 70a–71a (R.R. ___) (emphasis added). Firetree argues that "approved" is not the equivalent of "signed" and that affixing one's signature is but one method of indicating approval. We disagree.

The form Agreement of Sale contains signature lines for the "buyer" as well as the Secretary of General Services in his capacity as "seller." R.R. 73a. It also contains signature lines for the Office of Chief Counsel—the Department, the Office of Attorney General and the Office of General Counsel, each of which appear under the phrase "Approved for Form and Legality." *Id.* Similarly, the signature line for the Governor appears under the word "Approved." *Id.* Clearly, by conditioning the validity of the Agreement of Sale on the "approval" of the Secretary of General

Services and the other officials, and then repeating the word "approved" above each signature line, the Department intended that the signatures of those officials were necessary to create a valid, enforceable contract.

Our reasoning is in accord with at least one decision of the Pennsylvania Supreme Court. In *Franklin Interiors v. Wall of Fame Management Company*, 510 Pa. 597, 511 A.2d 761 (1986), Franklin Interiors obtained a confessed judgment against Wall of Fame pursuant to a warrant of attorney contained in a written contract for custom millwork. Wall of Fame petitioned to open and/or strike the judgment, which the trial court granted since Franklin Interiors had never executed the contract. On appeal, the Supreme Court focused on the following language in the contract: "This document does not become a contract until *approved* by an officer of Franklin Interiors." *Id.* at 599, 511 A.2d at 762 (emphasis added). The Court reasoned that the foregoing language "inserted in this document by [Franklin Interiors], clearly and unambiguously required it to execute the document." *Id.* at 601, 511 A.2d at 763. Thus, contrary to Firetree's argument in the case *sub judice*, "approved" and "signed" are not *per se* mutually exclusive concepts.

■ At best, Firetree's averments in its Statement of Claim create ambiguity regarding the Department's meaning of the word "approved" in the form Agreement of Sale. To the extent there was any ambiguity about the meaning of this term, the Board correctly turned to the language in the Solicitation Document to discern the Department's intent. It was not error, as Firetree contends, for the Board to do so since Firetree included the Solicitation Document as an exhibit to its Statement of Claim. As aptly noted by the Board, in the context of a demurrer it is not necessary to accept as true averments in the complaint which are in conflict with exhibits attached to the complaint. *Philmar Mid–Atlantic, Inc. v. York Street Associates*, 389 Pa.Super. 297, 566 A.2d 1253, 1254 (1989).

The language employed by the Department in the Solicitation Document weighs heavily in favor of its position on appeal. Section III of the Solicitation Document sets forth the "Terms and Conditions" of the invitation to bid, the first of which states:

This Invitation does not constitute a solicitation or an offer for the purchase of the Property or any portions thereof, nor a solicitation or offer to sell the Property or any portions thereof. Neither the State, or any of the State agencies, departments, boards or commissions, shall incur any obligation or liability on account of this Invitation or any submission made in connection with this Invitation or any other reason *unless and until an Agreement of Sale (in the form set forth in Exhibit C to these Instructions) for the Property setting forth all the terms and conditions of a transaction has been fully executed and unconditionally delivered by all the parties thereto* and all necessary consents and approvals for [the Department's] entry into such agreement have been obtained including, without limiting the foregoing, approval by the Secretary of General Services.

*No bid for the Property shall be deemed accepted by [the Department] until such time as [the Department] delivers a fully executed Agreement of Sale to the Buyer.*

R.R. 21a (emphasis added). The highlighted language lays to rest any doubt regarding the Department's intent. It is abundantly clear that a valid and enforceable Agreement of Sale is one that is "fully

executed" and which contains the signatures of "all the parties," including the Secretary of General Services. Until Firetree was delivered a fully executed Agreement of Sale, it did not have an acceptance of its offer.[9]

 For the foregoing reasons, we hold that the partially executed form Agreement of Sale did not constitute an enforceable contract between Firetree and the Department. Consequently, because Firetree could not possibly prevail in a breach of contract action the Board of Claims did not err in dismissing Firetree's Statement of Claim on the Department's demurrer. Accordingly, we affirm the Board's order.[10]

### ORDER

AND NOW, this 9 th day of March, 2007, the order of the Board of Claims in the above-captioned matter, dated May 2, 2006, is AFFIRMED.

---

9. Firetree tries to argue that once it was advised that its bid was accepted, the Solicitation Document became irrelevant. We agree with the Department that the parties were bound by the Solicitation Document until such time as Firetree's offer was "accepted" by delivery of an Agreement of Sale executed by the Secretary of General Services.

10. On June 23, 2006, after the present appeal had been filed, Firetree filed a motion to remand this matter to the Board of Claims for consideration of "newly-discovered material evidence." According to Firetree, in an unrelated matter currently pending before the Board of Claims, *New Foundations, Inc. v. Department of General Services*, Docket No. 3815, the Department admitted to New Foundations' averment that "[a] separate entity, Firetree, Ltd., entered into an Agreement of Sale to purchase the Laurelton Center in Union County." Firetree, Ltd., Memorandum of

Law, August 11, 2006, at 3. the Department has acknowledged that its attorney inadvertently admitted to New Foundations' factual allegation, and it has filed with the Board a motion for leave to amend its Answer. Should the Board grant the Department's motion, Firetree's motion to remand the present matter will be rendered moot. In any event, the Department has consistently denied the existence of a contract with Firetree since the instant dispute began. We agree with the Department that "[i]t would be legal sophistry, reminiscent of an age long past, to determine the rights of litigants on such technicalities of pleading." *Consentino v. Vittoria*, 394 Pa. 538, 544, 147 A.2d 839, 842 (1959). This is especially true where the technically deficient pleading was filed in a wholly unrelated matter. We therefore deny Firetree's motion to remand.