# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harry Gerry,                                                          :
                                                                     :
                                    Petitioner                       :
                                                                     :
                    v.                                               :     No. 1161 C.D. 2015
                                                                     :
Workers' Compensation Appeal                                         :     Submitted: November 20, 2015
Board (LBK Transportation and                                        :
ABBA Motor Lines, Inc.),                                             :
                                                                     :
                                    Respondents                      :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MARY HANNAH LEAVITT, Judge[1]
            HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                         **FILED:  March 9, 2016**

Harry Gerry (Claimant) petitions for review of the Order of the Workers' Compensation Appeal Board (Board), affirming, on other grounds, a decision of a Workers' Compensation Judge (WCJ) denying his Claim Petition.  On appeal, Claimant argues that the Board erred by dismissing his Claim Petition for lack of jurisdiction.  Because we agree with the Board that Claimant has not established the jurisdiction of the Pennsylvania workers' compensation authorities, we affirm.

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

**BACKGROUND**

On January 9, 2013, Claimant filed a Claim Petition alleging that he was injured in a motor vehicle accident on December 8, 2012 while transporting a crane for ABBA Motor Lines, Inc. (ABBA) outside of Fergus Falls, Minnesota. (Claim Petition at 1, R.R. at 1a.)[2] Claimant alleges that he was transporting a crane for ABBA from Canada to Minnesota when another vehicle pulled in front of him, causing him to lose control on the icy interstate highway. (Claim Petition at 1, R.R. at 1a.) The motor vehicle accident allegedly caused Claimant to sustain multiple injuries to his "neck, mid back, back, right shoulder[,] and collarbone." (Claim Petition at 1, R.R. at 1a.) Claimant also filed a Penalty Petition on January 9, 2013, alleging that ABBA and LBK Transportation, Inc. (LBK) did not file documents with the Bureau of Workers' Compensation within twenty-one days of receiving notice of the injury as required by Section 406.1(a) of the Workers' Compensation Act (Act).[3] ABBA and LBK jointly filed an Answer to Claimant's

---

[2] Claimant filed his Claim Petition against both ABBA and LBK Transportation Inc. (LBK). According to Claimant, he filed the Claim Petition against LBK because "when I researched the company I saw that LBK and [ABBA] were linked together. And it seems as though they're operating out of the same building." (Hr'g Tr. at 99-100, February 20, 2013, R.R. at 126a-27a.) The WCJ found that Claimant worked for ABBA, not LBK. (FOF ¶ 25.)

[3] Act of June 2, 1915, P.L. 736, added by Section 3 of the Act of February 8, 1972, P.L. 25, as amended, 77 P.S. § 717.1(a). Section 406.1(a) of the Act provides, in relevant part:

> The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable . . . . The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability.

Id.

Claim and Penalty Petitions denying an employment relationship and alleging that Claimant cannot receive benefits under the Act because the alleged injuries "occurred outside of Pennsylvania and [Claimant's] claim does not meet the territorial standards for jurisdiction in Pennsylvania." (Answer to Claim Petition at 1, R.R. at 7a; Answer to Penalty Petition at 2, R.R. at 12a.)[4]  Claimant's Claim and Penalty Petitions were consolidated and assigned to the same WCJ for disposition.

Two hearings were held on the matter at which Claimant testified on his own behalf and Raymond Hummer, President of ABBA, and Samuel C. Miller, Vice President of ABBA, testified on behalf of ABBA.  At the first hearing on the matter, held on February 20, 2013, the parties jointly requested that the case be bifurcated.  (Hr'g Tr. at 8-9, February 20, 2013, R.R. at 35a-36a.)  Upon consideration of the request, the WCJ agreed that the issues of jurisdiction and whether an employment relationship exists between Claimant and ABBA would be treated separately from the adjudication on the compensability of Claimant's injury and Claimant's demand for penalties.  (Hr'g Tr. at 8-9, R.R. at 35a-36a.)

The following facts are not in dispute.  Claimant has worked as a professional truck driver since 1989.  (WCJ Decision, Findings of Fact (FOF) ¶ 9.)  In January of 2012, Claimant interviewed for a possible position with Mr. Hummer at ABBA's office in Chambersburg, Pennsylvania.  (FOF ¶ 10.)  Following the interview, ABBA scheduled an appointment for Claimant at a local health care

---

[4] Claimant also filed a Claim Petition against the Uninsured Employer Guaranty Fund (Fund) on February 5, 2013, which was dismissed by the Board for lack of jurisdiction in the same Order under review herein.  The Fund did not intervene in this appeal.

facility so that Claimant could provide a specimen for a drug test, which was provided by Claimant on January 9, 2012. (FOF ¶ 11; Federal Drug Testing Custody and Control Form, R.R. at 140a.)

Claimant testified that he received his first assignment from ABBA via the telephone in the days "shortly after" the interview. (Hr'g Tr. at 96, February 20, 2013, R.R. at 123a.) Claimant lives in West Virginia, but testified that he was residing in Chambersburg near the time he received the phone call. (FOF ¶ 12.) Claimant could not remember which state he was in when he received the telephone call and accepted his first assignment. (FOF ¶ 12.)

Claimant performed his first assignment for ABBA on January 17, 2012. (FOF ¶ 12.) On January 23, 2012, Claimant went to ABBA's office in Chambersburg and signed an "Independent Contractor Statement" and other documents related to his work for ABBA. (FOF ¶ 14; Hr'g Tr. at 76, R.R. at 103a; Hr'g Tr. at 62-63, April 11, 2013, R.R. at 318a-19a.) The Independent Contractor Statement provides as follows:

### INDEPENDENT CONTRACTOR STATEMENT

The undersigned hereby acknowledges that he/she is an Independent Contractor of ABBA Motor Lines, Inc. No other relationship is implied or exists. As an Independent Contractor, the undersigned understands that:

1. There are no separate "benefits," such as retirement, a 401k plan, a pension plan, and health insurance;

2. There will be no taxes of any nature withheld by ABBA Motor Lines, Inc.[,] and I will be solely responsible for payment of all taxes including income and self[-]employment;

3. I will not be entitled to or covered by unemployment or workers['] compensation; and

4. The monies paid to me will be reported on a 1099 as non-employee compensation.

(Independent Contractor Statement, R.R. at 139a.)

Claimant's role with ABBA was to transport cranes from one location to another. (Hr'g Tr. at 13, February 20, 2013, R.R. at 40a.) The cranes Claimant transported were not owned by ABBA or LBK; ABBA is simply a service provider transporting cranes for its customers to specific end points. (Hr'g Tr. at 36, April 11, 2013, R.R. at 292a.) Many of the cranes Claimant transported were picked-up in Pennsylvania, but other cranes were located in other states or in Canada. (Hr'g Tr. at 13, February 20, 2013, R.R. at 40a; Driver Logs, R.R. at 359a-73a.) Claimant usually started his assignments from his home in West Virginia. (FOF ¶ 13.) While out on the road transporting a crane for ABBA, Claimant was required to check-in with ABBA's office in Chambersburg, Pennsylvania each morning and evening so that ABBA could keep customers informed of delivery dates. (FOF ¶ 24.) If the cranes Claimant was transporting required a state permit, Claimant was required to follow the pre-assigned route written on the permit itself. (Hr'g Tr. at 92, R.R. at 119a.) When no permit was required, ABBA supplied Claimant with suggested routes. (Hr'g Tr. at 92, R.R. at 119a.) Claimant's pay was once docked when transporting a crane that did not require a permit for driving outside an ABBA provided suggested route. (FOF ¶ 23; Hr'g Tr. at 50, April 11, 2013, R.R. at 306a.) ABBA also provided Claimant with "a list of suitable hotel and fuel stops." (FOF ¶ 18.) Claimant usually stayed at hotels on the list, though he

5

testified that he was not required to patronize only those establishments listed. (FOF ¶ 18; Hr'g Tr. at 34-39, February 20, 2013, R.R. at 61a-66a.)

Claimant testified to the policies ABBA required him to follow. Such policies include: (1) a no smoking policy; (2) a drug and alcohol usage policy; (3) a policy requiring drivers to report moving violations; and (4) a policy forbidding handheld cellphones while driving. (Exs. C-19-C-22, R.R. at 212a-15a.) Mr. Hummer testified that these policies are "required either by federal regulation or by the nature of ABBA's business." (FOF ¶ 22.)

Claimant was required to submit driver logs and other paperwork to ABBA at the end of each run. (Hr'g Tr. at 46, R.R. at 73a.) Claimant was given a mailbox at ABBA's headquarters in Chambersburg where he would receive memos from ABBA on his duties. (Hr'g Tr. at 32-33, R.R. at 59a-60a.) ABBA also provided Claimant a Carhartt coat with the ABBA logo embroidered on the coat, pens identifying ABBA to give to clients, and generic business cards for ABBA drivers. (FOF ¶ 17; Business Card, R.R. at 358a.) ABBA also posted a picture of Claimant on its website, listing Claimant as a driver. (FOF ¶ 17.)

Claimant was free to reject transportation jobs offered to him by ABBA. (Hr'g Tr. at 41-42, April 11, 2013, R.R. at 297a-98a.) Claimant rejected one such job in July of 2012 because the opportunity was not profitable. (FOF ¶ 19; Hr'g Tr. at 61, February 20, 2013, R.R. at 88a.) At a time when ABBA did not have any jobs for him, Claimant was hired by JB Hunt for one week. (FOF ¶ 21; Hr'g Tr. at

60, R.R. at 87a.) Mr. Hummer knew that Claimant took this job and was not concerned. (Hr'g Tr. at 61, April 11, 2014. R.R. at 317a.)

With regard to remuneration, Claimant was paid by ABBA by the mile and, in the event of a breakdown, Claimant was paid by the hour. (FOF ¶ 15.) Claimant also received "a Christmas bonus and two safety bonuses." (FOF ¶ 15.) Claimant received a federal tax form 1099 for these earnings. (FOF ¶ 15.) Claimant was responsible for paying for his travel expenses to the crane pick-up location if the location was near, and ABBA sometimes paid for Claimant's trip home after delivering the crane. (FOF ¶ 13.) When Claimant was required to fly to pick up a crane, ABBA made the arrangements and often paid for the airfare. (Hr'g Tr. at 25-26, February 20, 2013, R.R. 52a-53a; Hr'g Tr. at 45, April 11, 2013, R.R. 301a.) Claimant received reimbursement for tolls and would receive a per diem for food. (FOF ¶ 16.) ABBA provided Claimant with a credit card so that Claimant could pay for fuel and gain access to airline flights and rental cars. (FOF ¶ 16; Hr'g Tr. at 44-45, April 11, 2013, R.R. at 300a-01a.)

Upon review of the testimonies and evidence, the WCJ found the testimonies of Claimant, Mr. Hummer, and Mr. Miller credible and concluded as follows.

> 1. The Claimant has met his burden to establish jurisdiction in this matter. His employment was not principally localized in any state and his contract of hire was provisionally made in Chambersburg pending a satisfactory drug test. The Claimant does not need to prove whether he was in Pennsylvania or in West Virginia when he received the call from ABBA to begin his first trip.

7

2. The Claimant has not met his burden to establish that he was an employee of ABBA . . . . It was the parties' intent to enter into an independent contractor arrangement and ABBA . . . acted entirely consistent with that arrangement. Whenever ABBA . . . exercised control over the manner in which the work was to be done, that control was based on commercial trucking regulation or customer requirements, which are the obligation of both parties to the contracted performance of the Claimant's duties. The same can be said of extra safety duties that ABBA imposed and rewarded with a safety bonus. This was mutual consideration under the contract, not evidence of a master servant relationship. Most significantly, the Claimant was a skilled truck driver, he was permitted to reject trips and he was permitted to work for another employer during the time he was associated with ABBA . . . .

(WCJ Decision, Conclusions of Law (COL) ¶¶ 1-2.)

Claimant appealed to the Board. On appeal, Claimant argued that the WCJ erred by concluding that Claimant was an independent contractor and ignored facts favorable to Claimant. (Claimant's Appeal from Judge's Findings of Fact and Conclusions of Law, R.R. at 407a.) ABBA filed a cross appeal, wherein ABBA asserted that the WCJ erred by concluding that Claimant established jurisdiction in Pennsylvania. (Addendum to ABBA's Appeal from Judge's Findings of Fact and Conclusions of Law, R.R. at 413a.) Upon review, the Board affirmed the WCJ on the basis of a lack of jurisdiction. According to the Board:

Upon review, we cannot agree with the WCJ's conclusion concerning extraterritorial jurisdiction. The accident occurred in Minnesota; therefore, Claimant had the burden of proving that his injury fell under the extraterritoriality provision [of the Act]. Atkins[ v. Workmen's Compensation Appeal Board (Geo-Con, Inc.), 651 A.2d 694, 698 (Pa. Cmwlth. 1994)]. Under Section 305.2(a) of the

8

Act, [77 P.S. § 411.2(a),[5]] work injuries occurring outside Pennsylvania are also covered if the claimant's employment is principally localized in Pennsylvania. Claimant credibly testified that he moved cranes from various locations. The WCJ determined that Claimant's employment was not principally localized in Pennsylvania. Therefore, to establish jurisdiction under any of the other three subsections of Section 305.2(a), Claimant was required to prove that he was working under a contract of hire made in Pennsylvania.

A contract is created where the acceptance occurs. Pilot [v. Workmen's Compensation Appeal Board (Corning Glass Works), 485 A.2d 514, 516 (Pa. Cmwlth. 1984)]. We cannot agree with the WCJ's conclusion that Claimant was provisionally hired in Chambersburg pending a satisfactory drug test and therefore, Claimant did not have to prove where he was when he received his first assignment. Claimant would not have been hired or, alternatively, a contract would not have been offered to him if he had not passed the drug test. He was not able to establish where he was when he received and accepted a non-conditional offer. There is no dispute that the Independent Contractor Statement and other documentation were not completed until after Claimant had already performed work for ABBA; therefore, the execution of the documentation in Chambersburg does not control.

Claimant was not able to prove that he was working under a contract of hire made in Pennsylvania. He thus did not meet his burden of proving that his injury fell under the extraterritoriality provision.

The WCJ denied and dismissed the petitions for lack of an employment relationship. However, an appellate tribunal may affirm a correct ruling on a different basis than the lower tribunal. Tynan v. WCAB (Assoc. Cleaning Consultant & Servs.), 639 A.2d 856 (Pa. Cmwlth. 1994). We affirm the denial and dismissal for lack of jurisdiction.

---

[5] Added by Section 9 of the Act of December 5, 1974, P.L. 782.

9

(Board Op. at 5-6.) Claimant now petitions this Court for review.[6]

**DISCUSSION**

Claimant argues that the Board erred in dismissing Claimant's Claim and Penalty Petitions on the basis of lack of jurisdiction. "It is well-established that a claimant has the burden of proof to establish jurisdiction in Pennsylvania for his workers' compensation claim." Greenawalt v. Workers' Compensation Appeal Board (Bristol Environmental, Inc.), 91 A.3d 305, 308 (Pa. Cmwlth. 2014) (internal quotation marks and citation omitted). A claimant injured out of state may establish jurisdiction over a workers' compensation claim in Pennsylvania by proving that the extraterritoriality provisions of the Act apply. Atkins, 651 A.2d at 698. Section 305.2(a) of the Act provides:

> If an employe, while working outside the territorial limits of this State, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this act had such injury occurred within this State, such employe, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this act, provided that at the time of such injury:
>
> (1) His employment is principally localized in this State, or
>
> (2) He is working under a contract of hire made in this State in employment not principally localized in any state, or

---

[6] "Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.), 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

10

(3) He is working under a contract of hire made in this State in employment principally localized in another state whose workmen's compensation law is not applicable to his employer, or

(4) He is working under a contract of hire made in this State for employment outside the United States and Canada.

77 P.S. § 411.2(a).

Claimant first argues that the Board erred by concluding that Claimant could not establish jurisdiction because his employment is not principally localized in Pennsylvania.[7] Claimant argues that his injury falls under the extraterritoriality provision found in Section 305.2(a)(1) because his work was principally located in Pennsylvania. In support of his argument Claimant cites to our decisions in Williams v. Workers' Compensation Appeal Board (POHL Transportation), 4 A.3d 742 (Pa. Cmwlth. 2010) and Robbins v. Workmen's Compensation Appeal Board (Mason-Dixon Line, Inc.), 496 A.2d 1349 (Pa. Cmwlth. 1985). Claimant asserts that this precedent supports his claim that his work was principally located in Pennsylvania because: (1) he regularly picked up mail at ABBA's office in

_____

[7] ABBA argues that Claimant waived his argument that his employment was principally located in Pennsylvania. We disagree. We address a similar argument in Atkins, where we concluded:

> Although claimant did not raise in his appeal to the board the question of whether his employment was not principally localized in any state pursuant to section 305.2(a)(2), this issue is not waived on appeal to this court because it is a jurisdictional question regarding the subject matter jurisdiction of the workers' compensation authorities that this court must consider pursuant to Pa.R.A.P. 1551((a)(2) [sic].

Atkins, 651 A.2d at 699 n.3.

11

Chambersburg, Pennsylvania; (2) he was interviewed in Pennsylvania and lived in Pennsylvania at the time of his hire; and (3) sixty-five percent of the cranes delivered originated in Pennsylvania.

In order to find that a claimant's employment is "principally localized" in Pennsylvania, we turn to the three clause definition of the term set forth in Section 305.2(d)(4) of the Act, 77 P.S. § 411.2(d)(4). According to Section 305.2(d)(4), a Claimant's employment is "principally localized" in Pennsylvania when:

> (i) his employer has a place of business in [Pennsylvania] and he regularly works at or from such place of business, or (ii) having worked at or from such place of business, his duties have required him to go outside of the State not over one year, or (iii) if clauses (1) and (2) foregoing are not applicable, he is domiciled and spends a substantial part of his working time in the service of his employer in [Pennsylvania].

Id. "The three clauses of Section 305.2(d)(4) of the Act are all separate and distinct methods for determining jurisdiction under the Act." Williams, 4 A.3d at 746.

Claimant has not proved that he regularly works, or previously worked at or from ABBA's office in Pennsylvania, as required to established jurisdiction under Sections 305.2(d)(4)(i) and 305.2(d)(4)(ii) of the Act. For a claimant to establish that he "regularly works" at or from an employer's Pennsylvania business, the claimant must prove that "he worked from the Pennsylvania location as a rule, not as the exception." Atkins, 651 A.2d at 699. The evidence supports a finding that Claimant's work at ABBA's Chambersburg, Pennsylvania location is the

12

exception, not the rule. Claimant picks up mail and submits driver logs and other paperwork at ABBA's Chambersburg location, but the vast majority of his work is transporting cranes outside of ABBA's Chambersburg location. See Root v. Workmen's Compensation Appeal Board (U.S. Plywood Corporation), 636 A.2d 1263, 1265 (Pa. Cmwlth. 1994) (finding that a claimant's employment was not principally located in Pennsylvania when the claimant "started and ended every work day in her home/office in New Jersey" and "was required to attend only monthly sales meetings and other sporadic functions at Employer's Philadelphia office"); Minus v. Workmen's Compensation Appeal Board (TastyKake Baking Company), 496 A.2d 1340, 1342 (Pa. Cmwlth. 1985) (holding that because the claimant's "actual daily duties do not require him to work from the [Pennsylvania] office" his employment cannot be said to be principally localized in Pennsylvania).

Additionally, Section 305.2(d)(4)(iii) does not provide jurisdiction over Claimant's workers' compensation claim because Claimant is not *domiciled* in Pennsylvania. We find Claimant's evidence inapposite and citations to Williams and Robbins unpersuasive to this end. In both Williams and Robbins, the claimants established jurisdiction pursuant to Section 305.2(d)(4)(iii) over their workers' compensation claims by presenting sufficiently probative evidence showing that the claimants were domiciled in Pennsylvania and spent a substantial part of their "working time in the service of his employer in [Pennsylvania]." 77 P.S. § 411.2(d)(4)(iii); Williams, 4 A.3d at 747-48 (applying Section 305.2(d)(4)(iii) of the Act and assessing the time claimant, who resided in Williamsport, Pennsylvania, spent driving his truck in Pennsylvania); Robbins, 496 A.2d at 1351-52 (same where claimant resided in Morrisville, Pennsylvania). This

13

Court in Williams pointed out the difference in applying Section 305(d)(4)(i) and Section 305.2(d)(4)(iii), by explaining:

> [Section 305.2(d)(4)(i)] requires a place of business in Pennsylvania and proof that the claimant "regularly works" at or from that place of business. To satisfy the requirement that the claimant regularly works at or from a Pennsylvania location, this Court has required proof that the injured worker worked at that location as a general rule, not as an exception. . . . The standard in regard to work time is not as heavy for [Section 305.2(d)(4)(iii)]. When the factor concerning domicile is added, the claimant is no longer required to show he regularly works at or from a facility in Pennsylvania, he is only required to show a substantial part of his work time is spent within the Commonwealth.

Williams, 4 A.3d at 748. Because Claimant is domiciled in West Virginia, Section 305.2(d)(4)(iii) and our decisions in Williams and Robbins are inapplicable. Accordingly, we conclude that Claimant's employment with ABBA was not principally localized in Pennsylvania.

Claimant next argues that the Board erred by concluding that Claimant was required to prove where he was when he received the telephone call giving him his first assignment for ABBA to establish jurisdiction in Pennsylvania. Claimant argues that the WCJ was correct in concluding that Claimant's location "at the time of the cell phone call was not relevant, since all other activity surrounding the contract for hire took place in Chambersburg, Pennsylvania." (Claimant's Br. at 27.)

Section 305.2(a)(2) of the Act provides for the jurisdiction over a workers' compensation claim when an employee is injured out of state, "provided that at the time of such injury . . . [the employee] is working under a contract of hire made in

14

[Pennsylvania] in employment not principally localized in any state." 77 P.S. § 411.2(a)(2). A contract is created for purposes of Section 305.2(a)(3) of the Act "wherever the acceptance occurs." Pilot, 485 A.2d at 516. The WCJ found that after his interview in Chambersburg in January of 2012, "[t]he Claimant *felt he was hired* pending the drug test." (FOF ¶ 11) (emphasis added). Based on this finding, the WCJ concluded that Claimant's "contract of hire was provisionally made in Chambersburg pending a satisfactory drug test." (COL ¶ 1.)

Upon review, we agree with the Board that Claimant has not met his burden of showing that, at the time of his injury, he was working under a contract of hire entered into in Pennsylvania. "It is the well-settled law of this Commonwealth that a contract is created where there is mutual assent to the terms of a contract by the parties with the capacity to contract." Firetree, Ltd. v. Department of General Services, 920 A.2d 906, 911 (Pa. Cmwlth. 2007). It appears that the WCJ concluded that Claimant and ABBA mutually assented to a contract of hire with a condition precedent related to a satisfactory drug test.[8] We find no evidence supporting the WCJ's conclusion.

---

[8] We described a condition precedent in the contract setting as:

> a condition which must occur before a duty to perform arises. While the parties to a contract need not utilize *any* particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention.

Beaver Dam Outdoors Club v. Hazleton City Authority, 944 A.2d 97, 103 (Pa. Cmwlth. 2008) (internal quotations and citations omitted).

15

Although Claimant may have felt that a contract of hire, conditioned on a satisfactory drug test, was formed during Claimant's January 2012 interview at ABBA's office in Chambersburg, Pennsylvania, the testimony of Mr. Hummer, which the WCJ found to be credible, shows that ABBA did not assent to such a contract. The following exchange between Mr. Hummer and Claimant's counsel occurred at the April 11, 2013 hearing:

> Q. Did you interview [Claimant]?
> A. I did.
> Q. And where did that interview take place?
> A. At our office ….
> Q. In Chambersburg?
> A. Chambersburg. Yes, ma'am.
> Q. Pennsylvania?
> A. Yes.
> Q. Did you offer to hire [Claimant] at that interview?
> A. No.
> Q. So how did you view it with him when he left the interview?
> A. He had to fill out a document called DataFax which is a federal mandated paper that we have to do, a M.V.R., motor vehicle requirement, check background before we could even discuss further [sic] with him.

(Hr'g Tr. at 69, April 11, 2013, R.R. at 325a.) Because ABBA did not intend to enter into a contract of hire with Claimant at the January 2012 interview, we agree with the Board that the WCJ erred in concluding that Claimant entered into a provisional or conditional contract for hire with ABBA at that time.

The Board concludes that at the time of Claimant's injury, Claimant was working under a contract of hire made when he accepted his first assignment via the telephone from ABBA. We agree. "[E]ven where a later formal document is

16

contemplated, parties may bind themselves contractually prior to the execution of the written document through mutual manifestations of assent." George W. Kistler, Inc. v. O'Brien, 347 A.2d 311, 315 (Pa. 1975). Although Mr. Hummer could not recall why Claimant was given an assignment prior to the execution of documentation, (Hr'g Tr. at 70, R.R. at 326a), Claimant's testimony shows that he accepted the January 17, 2012 assignment in the days following his interview, prior to the January 23, 2012 meeting in Chambersburg, Pennsylvania where Claimant signed the documents. (Hr'g Tr. at 96, February 20, 2013, R.R. at 123a.)[9] Because the contract of hire is formed where acceptance occurs, Claimant was required to supply probative evidence to the WCJ showing that he accepted the contract for hire in Pennsylvania. Claimant could not recall where he was when he accepted the January 17, 2012 assignment, and therefore, Claimant has not sustained his burden to prove that his injury falls under the extraterritorial jurisdictional provisions of the Act.

Accordingly, we affirm the Order of the Board.

_____
**RENÉE COHN JUBELIRER, Judge**

---

[9] Neither party argues to this Court that a contract of hire was formed on January 23, 2012 by the execution of a written document. Furthermore, although it is firmly established that an oral contract of hire may be superseded by a subsequent written agreement when the writing states that it is a final and complete expression of the contract of hire, Bardwell v. Willis Co., Inc., 100 A.2d 102, 104 (Pa. 1953), no one argues, and there is neither evidence in the record that the written document modified, supplemented, or amended the oral agreement made between the parties prior to the January 17, 2012 assignment nor evidence of an integration clause.

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Harry Gerry,                                  :
                                              :
                              Petitioner      :
                                              :
                    v.                        :    No. 1161 C.D. 2015
                                              :
Workers' Compensation Appeal                  :
Board (LBK Transportation and                 :
ABBA Motor Lines, Inc.),                      :
                                              :
                              Respondents     :

## **O R D E R**

   **NOW**, March 9, 2016, the Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is hereby **AFFIRMED**.


_____
                    **RENÉE COHN JUBELIRER, Judge**